Okay, Mr. Page. May it please the Court. Kevin Page for Mr. Escalante. How many Fifth Circuit arguments for you now, Mr. Page? Mr. Page Not enough. Mr. Escalante Just curious. A lot. Mr. Page Not enough. We're approaching 50, I think. Mr. Escalante Glad to have you back. Thank you. Mr. Page Thank you. There are two reasons that Mr. Escalante's Utah offense is not a Tier 2 sex offense. The first is that a defendant may be guilty of the Utah offense in spite of his or her reasonable ignorance of the defendant's age. The second reason is that the prosecution need not prove an age difference in order to obtain conviction under the Utah offense. There are ultimately four things that I hope to tell you, two about affirmative defenses and the mistake of age defense, and two about age differences. We'll see if that's ambitious. The first point I want to make is a simple one, and it is that the universe of defendants who are convicted under the Utah offense at issue here and the universe of defendants who are convicted of 2243, the Federal Exemplar, are very different. And the Utah defendants are substantially less culpable than the Federal defendants in the Exemplar. Everyone who is convicted of 2243 has either failed to persuade a jury of their reasonable ignorance of the victim's age or has waived that defense pursuant to a plea. That is a very significant difference in culpability. A defendant who acts in spite of knowledge or with no reason to doubt the victim's minority is both more depraved and more dangerous than a defendant who acts in spite of reasonable ignorance of the defendant's age. The latter, which is the people who are caught by the Utah offense, have acted not by mistake but in spite of their knowledge of the circumstance that the law deems to be unacceptable. Yes, if we exclude offenses that are — that lack any way to litigate reasonable ignorance of the defendant's age, we will exclude a lot of statutory rape offenses from Tier 2. That's true. And we can look at the company that 2244 and 2243 are keeping in Tier 2's definition of Tier 2 sex offense to see that this is targeting an especially dangerous brand of sex offenders. It's always difficult to have a comparison of these kinds of offenses, but that is precisely the enterprise that the tiering system of Sornet is engaged in. Counsel, if we're arguing a blank slate, your argument has some persuasive force, but wouldn't we be creating a circuit split if we were to hold that the affirmative defenses matter here? Because 7th and 9th and the 11th circuits already held that different affirmative defenses do not matter under the categorical approach? Well, under — this case doesn't have to reach the question of whether affirmative defenses generally matter under the categorical approach. And it doesn't have to look generally at whether the Mathis definition of elements in the categorical approach apply to — whether those apply to generally throughout the categorical approach. Because in this case, you have the text of a statute, which isn't referring you to a general generic offense that we have to synthesize from 50-state codes like we did in Mathis. Here, we have a series of cross-references. We have a series of cross-references from Sornet to 2244 and then from 2244 to 2243, and the affirmative defense at issue here is right there in 2243. So here we have — we essentially have the text of a statute, which incorporates an affirmative defense in this case. That's going to be a very rare circumstance when you're applying the categorical approach. Is that not the case in Velazquez-Vosky or Donawa, the Ninth and Eleventh Circuit cases? Or you don't know? I'm not sure. We'll have to check on that. So is it your position that we would not be creating a circuit split if we were to rule in your favor? I'm sorry. I would have to know whether the Ninth Circuit addressed the Sornet case to know that. I'm not sure right now. I will do my — Okay. So do you have a position, other than knowing the case that I'm talking about? Do you believe that there will be a circuit split if we rule your way? Apart from your own research, do you believe there's a circuit split going to be created if we rule your way? Well, there will be — on the affirmative defense question, I'm not sure there will be a circuit split. If we get to the question of age differences, then there are some contrary authority in White and Berry and beyond. I want to point out, though, that all of those cases predated Esquivel-Quintana in this situation. So we don't have any case cited by either party that postdates Esquivel-Quintana about whether age differences or even the age of the victim ought to be considered under the categorical approach after Esquivel-Quintana applied the categorical approach to the age of minority. And if I could be permitted to move on to the question of the age differences, because the government does have to win both of these claims. The government has to win both that the strict liability nature of the Utah offense and the absence of an age difference element in the Utah offense defeat — or can be overlooked when comparing this to the Federal offense. So moving to the second question of age differences, the — in United States v. Young, this Court has already held that, in general, the tiering — the tier of — the tiering provisions of SORNA are subject to the categorical approach. It reserved the question of whether victim age might be subject to an exception for that. But the phrase that that would be tethered to in Tier 2, when committed against a minor, does not establish a circumstance — does not arguably, by its text, by its ordinary meaning, establish a circumstance-specific approach for age differences. In its terms, it speaks about the victim's age, right? And that's — But that's why we're not creating a circuit split on this point in White and Berry — I mean, in Berry and White and Ryan. Is that your point? Because — Yeah, that's one of two points. Because it's only the victim's age that is at issue there. Precisely. And — and in addition, there's the matter of Esquivel-Quintana, which postdates those — those questions. So both of those would mitigate any risk of a circuit split there. The — but I think that this does highlight a point about why Esquivel-Quintana is so important in this case, because my colleague, I think we could reasonably imagine, would argue with some force, why would we, Congress, want to have an exception to the categorical approach for the victim age, which pertains to ages, which seem to be readily established, if it didn't want one for age differences, which also pertains to age and are reasonably established? But we have a background default rule that the categorical approach applies. And so if there is an exception, it must come either from the words when committed against a minor, which don't create an exception for age differences, or from the sheer force of the policy equities, the common sense that we are willing to ascribe to Congress. And I would submit that that's generally not how statutory interpretation ought to work. But if it were true that the policy equities create this necessary exception to the categorical approach, then we would expect to have a different result in Esquivel-Quintana. We're having this discussion with all of us in a very precise, categorical sort of way, in a Byzantine sort of system. What do you say to the person who says, we know this person is much older and that there is a significant age differentiation, and to not be able to pierce and look through here is odd to the lay listener? I would say two things. The first is that that concern is not implicated as to the affirmative defense issue. The record does not contain any evidence at all about the defendant's knowledge. But that they actually are. Aren't they in their 30s or something? Yes. Mr. Escalante is in his 30s. The significant — I mean, I would have two responses to that concern, which I understand. The first is that if Congress wants to write an exception for this, Congress needs to write an exception for this. And if we are coming — if the Court comes in and rescues Congress from its poor drafting, then it's not creating incentives for Congress to say what it means in a prior statute. We already have a definition of what offense means in the first part of Tier 2. And offense means the statute. It means the offense as defined in the statute. And so Congress has not created an exception to the categorical approach in Tier 2 that pertains to this age difference. The second point is more — addressing more — the point more directly is that people plea bargain. I mean, that people have offenses — plea to offenses that are less than what the government can prove because there are perhaps elements in a greater offense that the government may not be able to prove. And we ought to honor the benefit of that bargain. That is part of the — an important part of the reason for the categorical approach, as described in Taylor, is that the defendant — we only look at judicially established facts because facts that have not been judicially established are facts that the Constitution hasn't permitted — the law hasn't permitted the defendant to challenge with — by the constitutional protections that are afforded to him. The final point I want — I hope to make, looks like I've gotten through most of them, is that there is absolutely no linguistic reason looking at the statute to think that the phrase, when committed against a minor, modifies the defendant's offense rather than the Federal exemplars. So if we look at the text of the statute in 2091 — excuse me, 2911.3, it says, an offense — an offender whose offense is punishable by more than one year and is comparable or more severe than the following offenses when committed against a minor. What reason is there to think that the phrase, when committed against a minor, which immediately follows the phrase, following offenses, is not modifying the following offenses, which are the Federal comparators? The significance of that is that if it is a restrictive phrase, when committed against a minor, what it's really doing is adding an element to all of the Federal exemplar offenses of minority, because not all of those offenses, 1591 — in fact, very few of those offenses, 1591, other parts of 2244, have minority as an element. The purpose of the phrase, when committed against a minor, is not to authorize application and inquiry into the facts. It is rather to add a hypothetical element to each of the Federal comparator offenses so that an element of minority will have to be present in every of the defendant's offenses that qualifies under Tier 2. If Congress had intended, when committed against a minor, to be modifying the defendant's offenses, it could have simply said, a defendant whose offense against a minor is punishable by one year, not throw the restrictive phrase halfway down the sentence and put it next to the Federal exemplar offenses, which it might be confused with modifying. And, in fact, that makes a great deal of sense in the overall statutory scheme because not all of the Federal exemplars have minority as an element. So what it's really just trying to tell us is that all Tier 2 sex offenses are going to have minority as an element to the Snyder and Wray. Does it matter that under the INA, the generic sexual abuse of a minor does not have an age differential in the circuit still, even after Esquivel-Quintana? Does it matter that there's no age differential requirement at all? I think it might matter if it went the other way. Well, I think that if we were raising, if we were dealing with that question under the INA, then we would have, I think we would have to confront this Court's narrow precedent about how narrow Supreme Court guidance is. Well, it's a clinging arguendo that Rodriguez is still good law in that area. Let's assume that. Does that affect this case in any way? I don't think so. I think that because, I think Esquivel-Quintana undermines Rodriguez to the extent that it is applied outside the INA. When we're dealing with a question that's just right on point under the INA, then we, then Supreme Court guidance is of less. But it doesn't undermine Rodriguez on the point about that there's no age differential requirement under generic abuse of a minor. I would submit that it does undermine its precedential force. Does it matter? Does it matter for your argument one way or the other? Do we need to address that in any fashion in this case? I would submit that the Court should leave that issue, leave that question open. All right. Thank you, Mr. Page. Thank you very much. You've saved time for rebuttal. Mr. Bunch? May it please the Court, Nicholas Bunch for the United States. What Mr. Escalante effectively wants this Court to do is take statutory rape of a 14-year-old girl and exclude it from Tier 2 or Tier 3 and put it into the lowest tier that's available to the United States. I don't know. What he wants us to do is to try to read and apply established case law regarding the categorical approach. That's our first step before we look at any practical consequences. I agree with that. You're just trying to poison the well by putting it that way, but that doesn't really answer the legal question that we have to answer. I think it is informative, Your Honor, of how to interpret the provisions of 20911, the SORNA provisions. No question this Court needs to— Pierce through, though. It would be lawless to just pierce through and say, look at this. This is a practical matter. Absolutely, and that's not my position. That's not the United States' position, Your Honor. When you actually look at this Court's precedents, you start with the categorical approach, and the categorical approach, as this Court has indicated, as the Supreme Court has indicated, is a focus on the elements of the offense, and the elements of the offense in 2243 are that the defendant engaged in some kind of sexual act or sexual contact with a minor between the ages of 12 and 16. When you focus on the elements, the elements of the statute of conviction, there are no disputes here between the Utah sexual abuse statute and the federal statute. Second, this Court is interpreting SORNA, and the provision of SORNA that's applicable says that a Tier 2 sex offender means a sex offender other than Tier 3 whose offense is punishable by imprisonment for more than one year and is comparable to or more severe than the following offenses. So the state offense can be comparable to or more severe than various federal offenses. This Court is in— Where is there any authority for looking into the victim age—victim perpetrator age differential rather than just the victim's age? Where is that authority? We have not cited that case. I don't believe that that case— There is no such case, is there? I don't believe there's a case, Your Honor. So you're wanting us to extend the law? No, Your Honor. I'm asking this Court to interpret the provisions of 20,911 in accordance with Department of Justice guidelines in terms of how we've implemented SORNA with the circuit cases from the Tenth Circuit, the Fourth Circuit, and the Ninth Circuit that have looked specifically to age in evaluating whether an offense fits into certain categories. Haven't those cases looked to age of the victim, not age differential? I think those courts have recognized that the language of SORNA suggests a circumstance-specific approach to age. For minor, because minor is—you'd have—that's in the statute itself. It has to say minor. You have to establish minor. I agree with Your Honor. You do have to establish that it is a minor. And when you compare Tier 2 to Tier 3, you can see what Congress was trying to accomplish. Tier 3 includes the language—Tier 3 offense is an abusive sexual contact, as described in Section 2244, against a minor who has not attained the age of 13 years. Tier 2, on top of that, says that an abusive sexual contact, as described in Section 2244 of Title 18, when committed against a minor. And what effectively that's doing is saying that offenses against minors under the age of 13 count as Tier 3, and offenses against minors between the ages of 14 and 18 fall into Tier 2. When we go back to interpreting SORNA—and again, that certainly is this Court's job to do— we have to start with the language comparable to or more severe than. And when you look at this Court's precedents, when they have applied that particular language, you can see that that doesn't necessarily mean that these statutes have to be identical in some way. In United States v. Coleman, a decision from this Court, the Court recognized that the comparable to or more severe than language meant that the statutes don't have to be identical, that the state offense can be slightly broader, and that the comparable to or more severe than language gives the Court some flexibility when comparing the two statutes. Well, is SORNA even applicable when you have the Utah statute broader than the federal? Absolutely SORNA is applicable, and the language of SORNA is applicable, because the question is whether the Utah statute is comparable to or more severe than. That's been applied in Coleman. It's been applied in Young. And I think looking at the specifics is informative here. In Coleman, it was a state statute that said it was an offense to act with the intent to— The federal offense required intent to abuse or gratify sexual desires. This Court, the argument there was, well, the Minnesota offense includes touching with simply aggressive intent, not sexual intent, and this Court rejected that position, saying that SORNA's broad purpose means a comparable statute could be slightly broader than the federal crime, because SORNA gives these courts, in making this determination, some flexibility. Young is similar. Young involved a Mississippi offense that criminalized the sexual touching of any body part. And the comparison there was to a federal offense in 2243 that identifies the specific body parts. So under the state statute, it could be any body part. Under the federal statute, it was narrower. It could be only certain specific body parts as enumerated in the statute. So in effect, a person violating the Mississippi law at issue in Young may not have engaged in conduct that would have violated the federal law, yet that this Court held the offense contained comparable elements, even if the body parts that are the subject of the touching are specifically listed in the federal definition but that are not specifically listed in the state definition. So the point being the language of 20,911 requires an analysis of whether the state offense is comparable to or more severe than, and this Court has already recognized on two different instances that that means the state offense can be slightly broader than the federal offense. So even if this Court wants to consider the applicability of the affirmative defense that's available in 2243C, that fact alone doesn't take it out, take this statutory rape offense outside of Category Tier 2. Do you have a position on whether if we consider the affirmative defense that that creates circuit split or not? Those cases are certainly not identified in the government's brief, and so I'll apologize on behalf of the author of the brief. When you walked in here today, did you have an opinion as to whether there would be a circuit split on affirmative defenses? I'm not familiar with those cases. Besides the cases, put those cases that we talked about a minute ago, what was your view of that issue? My position on that issue was that by considering affirmative defenses and applying the categorical approach, this Court would be going out on its own in a way that isn't supported by any other Supreme Court case that I've been able to identify. Had you looked at the circuits? I have not seen any cases. Either way. I have not, Your Honor. I have not seen cases either way, and I apologize if there are cases Your Honor is aware of that I haven't seen. Certainly I should be aware of those. So I don't want to overspeak as to what those cases do or don't say. Your position was there was not a case. Correct, Your Honor. The best case that the defendant, Mr. Escalante, has is Roebuck. Can you address harmless error? Do you believe that the government could show harmless error here, or do you concede that this would not be harmless error? I can understand why the government made that argument in the brief, but I'll tell you, standing here in front of this Court, I'm not going to support a harmless error position. So I think if you reject the government's position on this tier question, you need to send it back and let Judge Godbee impose the sentence for the first time again on the new guideline range. I'm not going to fight that point. I don't think you need to do that. I think the government should prevail on this question of the affirmative defense. There are no Supreme Court cases. I have not identified any circuit cases, subject to the caveat of not seeing what Your Honor is aware of. The closest that the defense gets, Mr. Escalante gets, is the United States v. Roebuck case out of the District Court of New Mexico. That case is a little bit unique. I think at first it's important to note that when the government came to the plea hearing, when the defendant entered his guilty plea, the government put him into Tier 1, and that was his understanding when he entered his guilty plea. And yet when the government got to sentencing in that case, the government had changed its position and put the defendant into Tier 3, resulting in a four-level adjustment to his offense level. And then second, in that Court's analysis of the issue, ultimately it says that the applicable standard is whether the statutes are identical to each other, whether the State offense is identical to the Federal offense. And that's not what the standard is in 2009-11. The standard, as I've indicated, is comparable to or more severe than. Excuse me. And then I'll just touch briefly, and I recognize, Judge Smith, your concern that obviously it's about interpreting the statute. But I do think that interpretation has to take into account the practical realities of what's happening. The first is that there are many affirmative defenses in State law, and there's many affirmative defenses available in Federal law. And if we expand the categorical approach to suddenly start looking at all the available affirmative defenses, that's going to open up a vast new set of inquiries. We also try to interpret generic versions of Federal law, at least in the ACCA context, in the INA context, not so much in SORNA as those offenses are listed, but what are generic affirmative defenses? What's the generic version of entrapment or duress or coercion or insanity? Ultimately also, my colleague indicated that only about a third of the States do not have this affirmative defense in the statutory rape context. In Perry, the Utah Supreme Court case that he cites, that court indicated that it's a majority of the States that do not have the available affirmative defense. And so if that fact alone takes those offenses out of the Tier 2, at least Tier 2 status, that's going to create a huge gap in classification. And the last point on this before I turn to the second issue is I think this Court has to look at what else is in Tier 2 and what else is in Tier 3. And Tier 2 covers sex trafficking, coercion and enticement, transportation with intent to engage in criminal sexual activity and abusive sexual contact. Tier 3 includes aggravated sexual abuse, abusive sexual contact against a minor who has not attained the age of 13, kidnapping of a minor. Statutory rape certainly fits in sort of a contextual sense within the types of offenses that have been listed into the various tiers. And so for that reason, for all those reasons, we'd ask that this Court reject Mr. Escalante's position that the affirmative defense somehow takes the Utah sexual abuse statute, statutory rape statute, out of the scope of Tier 2. Turning to the age differential, Judge Elrod, I'll accept I do not have a particular case exactly on point. What we do have is the Tenth Circuit, the Fourth Circuit and the Ninth Circuit recognizing that age is something that this Court can take a circumstance-specific approach to based upon the text of SORNA, of 2009-11. If one of the animating points behind that that I think the Tenth Circuit and Fourth Circuit recognize is that age is a relatively easily identifiable or determinable aspect. But it was tied to the text of the age that the person was a minor. No question. That's certainly true. But the same reasoning would extend to this question of age differential. We're talking about felony offenses. We're talking about offenders who are over the age of 18. But there's no text that says for offenders over this age. It says the statute in Utah has been amended to do over the age of 18, but that's post this case. So how in the world do you— there's no text that relates to the Offenders Act or the age differential in the statute. There is no particular text, Your Honor, but it is when committed against a minor, and a minor is defined as being between the ages of 12 and 16. Right, but before that, I mean, the perpetrator could even be a minor even before the amendment took place, which is the time period. So it doesn't tell us much of anything. The purpose and intention of the cases that have interpreted this text is that age— and I think by extension age differential is something that can be easily determinable. By extension. Absolutely, Your Honor. I don't have a particular case directly on point, but I do think that the purpose behind those cases, certainly consistent with the purpose behind SORNA, is to be broad. And this Court has recognized in Gonzales-Medina that Congress cast a wide net to ensnare as many offenses against children as possible. This Court also recognized that the purpose was to eliminate potential gaps and loopholes under preexisting standards by means which sex offenders evade registration requirements or the consequences of registration violations. If you look at the legislative history of SORNA— Counsel, what do you do with the fact, though, that SORNA has different provisions and the text of 209-115C is different than the text that applies here? One has an age differential exception in SORNA's text as an exception in that section, whereas this section of SORNA doesn't have anything of the sort. Well, I think the provision of 209-115C is trying to decide what we're going to sweep into SORNA. And SORNA cast this broad net to try to bring in as many offenses as possible and tried to create a situation where certain offenses would be set aside. Yet when we get to the tiering category, they draw distinctions based upon the victim's age. Offenses against minors under the age of 13 are in the highest, most severe category. Offenses against minors between the ages of 14 and 18 fall within the second category. I think that's the intention of SORNA. The purpose being to sweep in that broad way. The other point that I think is important here is that what Njuan v. Holder says in this context, Njuan's interpreting the INA, different statute, different statutory text. But what the Supreme Court said there is that in the context of a fraud case, we can look to the specific circumstances to determine the loss amount and whether it exceeded $10,000. The calculation of loss in a fraud case is a much more challenging, difficult, less objective of an inquiry than the calculation of the ages of both the victim and the defendant in a sex offense case. Relatedly, Njuan says if we don't read the statute to require a circumstance-specific approach to loss, then we're going to render that provision a nullity. And when you start looking at various state offenses in the sex context, there are not going to be the perfect match, the one-to-one match, that Mr. Escalante wants this court to go down. So you're always going to be comparing these different ranges based upon what the different states say. And we have that in other contexts, too, where things – we pointed out on Bonk that sometimes it will not sweep in a whole category of different states, burglaries and all of that. So that doesn't answer the question if it were to leave out a group of people because there's no good match. But that's not the case here. There is a match. Tier 1 will match up. I believe, Your Honor, that Tier 2 matches up in this particular context, so I'll stand by that position. The last point as my time is about to expire, I want to touch on Esquivel-Quintana, which is certainly relied upon heavily by my colleague. First off, that is an INA case. It's not a SORNA case. There's nothing pointing to a circumstance-specific approach in the language of the INA. It says simply is the aggravated felony is a sexual abuse of a minor. And the court there recognized that the California law was unique because 18 was the age of consent, and the court was very careful not to address the question of the age differential. The court actually set that issue aside at the end of the opinion because I think it recognizes the varied state laws at issue here, and if the court takes this path that only certain laws or certain age ranges count as either sexual abuse of a minor for purposes of the INA or the same logic applies here with respect to SORNA, large categories of statutory rape offenses are going to be excluded. Unless the court has more questions, that's all. Thank you, Mr. Dodge. Mr. Page, you've saved time for rebuttal. May it please the Court to answer Judge Elrod's question about circuit splits and affirmative defenses. I am aware of three cases that address affirmative defenses in the context of the categorical approach. One of them is Roebuck. It doesn't have a lot of discussion of it, but it does have the virtue of being a SORNA tiering case. And so that authority is on point and supports the defendant's position. The second is Gomez-Mendez. That's a Ninth Circuit case. That says we exclude affirmative defenses in the context of the INA's reference to the generic offense of sexual abuse of a minor. However, I would submit that that would not create much tension with that case to rule in the defendant's favor on the affirmative defense question here because sexual abuse of a minor is a generic offense, and so the Court then is tasked with the job, sometimes the very onerous job, of compiling all of the 51 state statutes in D.C. and synthesizing a generic offense. And in that case, where the Court is doing its own job, its own work in deciding what it's going to compare the offense to, it might include affirmative defenses or exclude them because the job is already difficult enough. But in this case, you have a cross-reference to 2243. And 2243 has the affirmative defense that Mr. Escalante is relying on right there in 2243. If SORNA, the SORNA tiering statute, had wished to exclude affirmative defenses, it could have simply cross-referenced to 2243A and rather than encompass all of 2243, which includes the affirmative defense. The final case I'm aware of is Asbury. I don't know much about that. It's cited in Gomez-Mendez. I can't tell you whether that's a SORNA case or not, but I doubt it. But Mr. Escalante's position is no affirmative defense authority that doesn't address SORNA will be contrary to what the narrowest possible grounds for decision for Mr. Escalante on the first issue here would be, which is that this case is simply an application of the SORNA tiering statute and its cross-reference ultimately to 2243. I do want to address my— You don't have to address the affirmative defense, though, as you pointed out, right? No. That's assuming, arguendo, you were right on the second point. That's correct. Those are absolutely independent grounds for decision. So to address my opponent's most heavily pressed argument that the word comparable would authorize you to ignore the two differences between Utah and the Federal exemplar in this case, the standard that's set forth in Coleman that's unpublished, but it does seem to be this Court's final word on the matter so far, is that an offense is comparable if the difference is slight. And I don't think a mistake of age is a slight difference in the culpability of the offender that's at issue. That is the difference between an intentional crime and a strict liability crime. That's a major difference between the statutes. I don't think age difference is slight either. Now, maybe a difference between a three-year age difference and a four-year or two-year or four-year, that could be disregarded potentially as slight, but Utah has no element, case-in-chief element, at all of an age difference. And that is the difference in culpability there is very significant. That is a very controversial issue about statutory rape offenses where there is when the parties happen to be on opposite sides of the age of consent, but they're grouped together. That's a very different matter in terms of culpability. So I don't think the comparable language helps the defense here. And then finally, just to highlight a point that Your Honor made about subsection C and the exception for age differences to the definition of a sex offense in the first place, whether you get a disorder in the first place, there is an exception for offenses that don't have this age difference, and that demonstrates, one, that Congress has age differences in mind and that we might have expected them to appear in the phrase that putatively creates an exception to the categorical approach for the age of the victim if it wanted to do so. And it shows that by the authority of Gonzalez-Medina, that Congress knows how to dispense with the categorical approach for age differences when it wished to do so, and it hasn't done so here. Thank you. Thank you, Mr. Page.